**UNITED STATES of America,
Appellant,**

v.

**Billie Pirner GARDE.**

No. 88–5022.

United States Court of Appeals,
District of Columbia Circuit.

June 17, 1988.

Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence, and Mark E. Nagle, Asst. U.S. Attys., Dept. of Justice, Washington, D.C., were on appellant's motion to dismiss.

Marya C. Young, Washington, D.C., for appellee.

Patti A. Goldman, Alan B. Morrison, David C. Viadeck, Washington, D.C., for Government Accountability Project.

Before SILBERMAN, D.H.
GINSBURG and SENTELLE, Circuit Judges.

## ON MOTION TO DISMISS

## PER CURIAM.

In the course of representing its clients, Government Accountability Project ("GAP")[1] received information about safety problems at the South Texas Nuclear Plant ("South Texas"). GAP offered to provide this information to the Nuclear Regulatory Commission ("NRC" or "agency") on the condition that informant identities and information that could lead to the informants' identification, be kept confidential. GAP also requested that the information be provided to a special team of the NRC office other than the NRC Region IV, which had a reputation for disclosing confidential identities to the utility accused of having safety problems. Rejecting this offer, the NRC issued to GAP attorney, Billie Garde, a subpoena seeking all information about the safety problems at South Texas, including the identities of the whistleblowers. Ms. Garde, invoking the attorney-client privilege, refused to honor the subpoena.

The NRC, through the United States, brought an action against Garde in the district court, contending that it needed to obtain the identities of the whistleblowers.[2]

GAP intervened, opposing the enforcement of the subpoena on different grounds. GAP argued that disclosure of the identities of the whistleblowers would chill GAP's and the whistleblowers' "First Amendment associational rights" in their promotion of nuclear safety. Both GAP and Garde argued that enforcement of the subpoena would force GAP's attorneys to breach the attorney-client privilege, attorney work product privilege, and press privilege.

Persuaded by Garde's and GAP's arguments, the district court denied the NRC's petition for enforcement of the subpoena, finding that the subpoena unduly infringed on the first amendment associational rights of GAP and its clients. In addition, the district court advised the NRC that it must pursue less intrusive alternatives to obtain the information sought. *United States v. Garde*, 673 F.Supp. 604, 607 (D.D.C.1987). Accordingly, the NRC agreed to establish a technical team to review the safety problem allegations. The NRC also agreed to maintain the confidentiality of the identities of the whistleblowers if it obtained that information.

GAP then provided the safety problem information to the NRC personnel. The personnel receiving this information did not include anyone from Region IV. Taking measures to maintain confidentiality, GAP omitted the informants' identities and any other identifying information from the material provided. Based on the information received, the NRC established a special team, which also excluded Region IV personnel, to conduct a more in-depth review of the allegations. GAP permitted this team to review information contained in its

1. GAP is an organization "which has been an advocate on behalf of" whistleblowers. *See United States v. Garde,* 673 F.Supp. 604, 604 (D.D.C.1987).

2. The NRC clarified its investigative objective when at trial it "cast the subpoena in somewhat narrower terms and advised the Court that it would consider the subpoena satisfied if Ms. Garde disclosed the identity [sic] of her clients and other informants." *Garde,* 673 F.Supp. at 606.

files except for "information provided by the NRC employees and certain whistleblowers" who refused to consent to such a review or could not be reached to obtain their consent. Ultimately, the NRC secured the information it sought to obtain by way of the subpoena, except the identities of the whistleblowers.[3] Nonetheless, a timely appeal was filed from the order denying the enforcement of the subpoena.

Now, appellant moves this court to dismiss its appeal as moot and remand the case with directions to the district court to vacate its decision pursuant to *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).[4] Although appellees Garde and GAP agree that the appeal should be dismissed, they argue that the case is not moot and that the district court opinion should not be vacated. In resolving this matter, we turn first to the mootness issue.

### I. MOOTNESS

■ Appellees contend that the case is not moot because the controversy between the parties centered around the disclosure of the whistleblowers' identities and related information. They contend that NRC's

withdrawal of the appeal falls within the "voluntary cessation of illegal activity" exception to the mootness doctrine. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). We disagree with appellees' argument.

■ Once the information regarding the allegations of nuclear safety problems was received by the NRC, and was deemed by the agency sufficient to satisfy the relief it sought on appeal, the substance of the controversy disappeared and the case became moot. *See Center for Auto Safety v. EPA*, 731 F.2d 16, 19 (D.C.Cir.1984) (subsequent release of records in FOIA case). Insofar as there is no relief that could be granted by this court, the appeal must be dismissed as moot. *See Public Media Center v. FCC*, 587 F.2d 1322, 1326 (D.C.Cir. 1978) (dismiss as moot when events during pendency obviate possibility of meaningful relief). *See also Morgan v. Nucci*, 831 F.2d 313, 332 (1st Cir.1987) (complete or substantial completion of project renders court unable to fashion meaningful relief); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 150–51 & n. 6 (3d Cir. 1986) (no available relief moots appeal).[5]

---

**3.** NRC learned some of the whistleblowers' identities from information in GAP's files which listed their names. Also, some whistleblowers voluntarily identified themselves to the NRC.

**4.** "The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear*, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

**5.** Appellees' argument that this case falls within the "voluntary cessation of illegal conduct" exception to the mootness doctrine, is without merit. That exception applies if (1) there is a reasonable expectation that the challenged action will recur, and (2) the action's effects are not completely and irrevocably eradicated by

the interim events. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *Matson Navigation Co. v. United States*, 825 F.2d 502, 503–04 (D.C.Cir. 1987).

Here, the challenged conduct at issue was NRC's attempt to obtain the identities of GAP's clients and informants by way of a subpoena which it sought to enforce in the district court. This was the first time the NRC had issued a subpoena requesting such information, and on previous occasions had cooperated with GAP arrangements concerning the sensitivity and treatment of the identities and identifying information. *See Garde*, 673 F.Supp. at 604–05. It is not certain from the record that the NRC will seek enforcement of another subpoena requesting informant identities. Therefore, because this incident may be isolated, thereby making the fear of recurrence speculative and unreasonable, appellees have failed to satisfy the "reason-

Thus, we turn to the issue of vacatur.

## II. VACATUR

Relying on *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), appellant also requests that, if the appeal is dismissed as moot, the district court decision be vacated. In opposition, GAP contends that vacating the lower court decision would be inappropriate. GAP argues that, because the ruling below affirmed GAP's decision to withhold information on confidentiality and first amendment grounds, vacation thereof would preclude its use in the future. GAP further argues that as a result of the district court's judgment, the NRC complied with GAP's original terms by relinquishing its pursuit of the whistleblowers' identities, and agreeing that in the event it learned the identities, it would preserve their confidentiality. GAP contends that the NRC essentially settled for less information than originally sought by the subpoena.

In reply, the NRC argues that its acceptance of information was not a "settlement" for less information than originally sought. The agency states that it had informed the district court that its "investigative objectives could be achieved by obtaining either the names of the allegers or the substance of their allegations," and, in this instance, the information referring to the substance of the allegation was sufficient.

■■■ While vacating the lower court decision underlying a moot appeal is the general practice of this court, *see, e.g., Reuber v. United States*, 829 F.2d 133, 149 n. 131 (D.C.Cir.1987); *Matson*, 825 F.2d at 504; *Aviation Enterprises, Inc. v. Orr*, 716 F.2d 1403, 1407–08 (D.C.Cir.1983), this court has found it appropriate to depart from that practice in order to avoid unfairness to parties who prevailed in the lower court. *See Center for Science In The Public Interest v. Regan*, 727 F.2d 1161 (D.C. Cir.1984) ("*CSPI*").[6] We consider this an appropriate case in which to invoke the *CSPI* exception.

In *CSPI*, this court stated that, in a case in which "review is prevented, not by happenstance, but by the deliberate action of the losing party before the district court, ... the district court should not be ordered to vacate its decision." *Id.* at 1165–66. Rather, "the prevailing party, ... ought to be left in the same position as if no appeal had been taken." *Id.* at 1166.[7] In reaching this conclusion, the *CSPI* court relied on a Second Circuit case which supports the application of the exception to the present case. *See Cover v. Schwartz*, 133 F.2d 541 (2d Cir.), *cert. denied*, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1942).

---

able expectation of recurrence" prong. *See Bois v. Marsh*, 801 F.2d 462, 466 (D.C.Cir.1986) (too many variables prevent prediction that challenged act will recur).

Assuming there is a reasonable expectation that NRC will issue another subpoena requesting informant identities in the future, appellees would not be without a means of redress. NRC would again have to proceed in the district court to seek enforcement of the subpoena. Any decision by the district court would then be reviewable. *See Matson*, 825 F.2d at 504.

**6.** Recently, other federal appellate courts have also noted limits to the vacatur requirement of the *Munsingwear* doctrine. This has occurred where the losing party deliberately mooted the question on appeal so as to destroy the preclusive effect of a final judgment below. *See State*

*of Wisconsin v. Baker*, 698 F.2d 1323, 1331 (7th Cir.1983). In another case, even though the appeal was moot, the parties had not reached a settlement. Thus, the court decided against vacatur of the district court judgment because it might deprive the prevailing party of the protection it had won. *Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir.1985).

**7.** Appellant, the losing party, has complied with the district court judgment and as a result, rendered the appeal moot. When "the appellant complie[s] with the judgment, ... the trial court's determinations ought to have the same conclusive effects that they would have if the appellant had not appealed at all." 1B Moore's Federal Practice ¶ 0.416[6], at 543–44 (2d ed. 1984).

In *Cover v. Schwartz,* the Second Circuit reasoned:

> This case has not become moot because of intervening circumstances over which appellant had no control. It resembles one where, after an appeal is taken, the defeated plaintiff ... executes a release of his right to appeal.... [D]ismissal of the right, as distinguished from dismissal of the appeal, might result in unfairness to appellee by subjecting him to other vexatious actions by appellant.

*Id.* at 546–47. Finding it wholly persuasive and applicable to this case, we endorse the Second Circuit's rationale. Additionally, we note that the Supreme Court recently ruled that the *Munsingwear* procedure is inapplicable to cases in which "the controversy ended when the losing party ... declined to pursue its appeal." *Karcher v. May,* — U.S. —, 108 S.Ct. 388, 395, 98 L.Ed.2d 327 (1987).

The distinction between litigants who are and are not responsible for the circumstances that render the case moot is important. We do not wish to encourage litigants who are dissatisfied with the decision of the trial court "to have them wiped from the books" by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial court decision. *See Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 721 & n. 1 (9th Cir.1982). *See also* 1B Moore's Federal Practice ¶ 0.416[6] at p. 543 ("It would be quite destructive to the principle of judicial finality to put such litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right of appeal.").[8] Therefore, in keeping with the spirit and intent of *Munsingwear,* we dismiss the current appeal as moot and deny the motion to vacate the judgment of the district court. This will prevent appellant from gaining any unfair advantage by its dismissal of the appeal[9] and avoid any prejudice to appellees by possibly subjecting them to a relitigation of the same issues. *Ringsby,* 686 F.2d at 721.

---

**8.** The *Munsingwear* Court itself noted that generally, "the judgment in the first suit would be binding in the subsequent ones if an appeal, though available, had not been taken or perfected." *Munsingwear,* 340 U.S. at 39, 71 S.Ct. at 106. Therefore, when appellant is precluded from obtaining review of an adverse decision because of subsequent intervening events not within its control, it is the duty of the appellate court to vacate the decision below in order to preserve the legal rights of the parties involved and avoid prejudice to appellant. *Id.* at 39–40, 71 S.Ct. at 106–07. *See also Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936). Thus, the primary objective behind vacating a lower court opinion would be distorted if a party were allowed to render deliberately a judgment unreviewable by its own action.

**9.** Appellant, by its own action, has foreclosed the opportunity for review of the adverse decision. Thus, "it 'is in no position to complain that [its] right of review of an adverse decision has been lost'" and, that it is, therefore, prejudiced by our refusal to vacate the lower court decision. *CSPI,* 727 F.2d at 1166 (quoting *Ringsby,* 686 F.2d at 722).