**424**

VAN SCHAACK HOLDINGS, LTD., a partnership, and H.C. Van Schaack, III, each Individually and/or Derivatively on Behalf of Box Elder Farms Company, a Colorado Corporation, Petitioners,

v.

L.C. FULENWIDER, Jr., L.C. Fulenwider III, and L.C. Fulenwider, Inc., a Colorado Corporation, Respondents.

No. 88SC527.

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

Rehearing Denied Oct. 9, 1990.

Brenman Raskin Friedlob & Tenenbaum, P.C., Richard H. Goldberg, David H. Wollins, Denver, for petitioners.

Holme Roberts & Owen, Donald K. Bain, Richard G. Wilkins, Denver, for respondents.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari in this case to determine the proper disposition of a pending C.R.C.P. 54(b) [1] appeal when the appellants voluntarily comply with the trial court's order. In *Van Schaack Holdings, Ltd. v. Fulenwider*, 768 P.2d 740 (Colo.App.1988), the court of appeals held that the parties, in effect, had settled the case in accord with the district court's order. Relying on the line of cases beginning with *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), the court of appeals dismissed the appeal as moot and vacated the lower court's judgment. We hold that there was no settlement, but under the circumstances of this particular case, the lower court's judgment was properly vacated when the appeal became moot. Accordingly, we affirm.

I

This case involves a dispute between petitioners, Van Schaack Holdings, Ltd. and H.C. Van Schaack, III (Van Schaack), and respondents, L.C. Fulenwider, Jr., L.C. Fulenwider, III, and L.C. Fulenwider, Inc. (Fulenwider), concerning a management agreement in which Fulenwider managed Box Elder Farms Company, a company jointly owned by Van Schaack and Fulenwider, in exchange for a percentage of gross income. Box Elder was formed in 1938 by Van Schaack and Fulenwider to manage nearly 40,000 acres of land located in Adams County. Its shareholders and directors consist entirely of members of the Van Schaack and Fulenwider families. The parties, who own equal portions of Box Elder stock, historically entered into management agreements in which Fulenwider was paid to manage the property.

Each management contract was effective for 10 to 12 years and was then replaced by a new agreement.

In the early agreements, Fulenwider was to receive 10% of the price of any land sold. In the 1962 renewal of the management agreement this percentage was modified so that Fulenwider would receive 8% of the gross sales price. The following provision was also added: "In the event any property of Box Elder shall be taken through condemnation, Fulenwider shall receive from Box Elder a fee equal to 8% of the gross award made to Box Elder on account of the taking of such property." The parties subsequently incorporated this provision into their 1972 renewal agreement, but increased Fulenwider's share to 10% of the gross award.

In 1982, shortly before the 1972 renewal agreement was due to expire, the parties became aware that a portion of Box Elder property might be condemned by the City and County of Denver for construction of a new airport. Based on the potential condemnation of a large tract by Denver, Van Schaack did not think it fair to include, in the new agreement, those provisions which granted Fulenwider a percentage of the proceeds of any land sold or condemned. Fulenwider, however, thought that the parties should renew the same management agreement that had been operative for decades.

In October 1982, L.C. Fulenwider, Jr. and L.C. Fulenwider, III, as officers of Box Elder, signed a new management agreement with L.C. Fulenwider, Inc. The new agreement retained the provision that, in the event of a condemnation, Fulenwider would receive 10% of the gross award. Van Schaack objected to the inclusion of any condemnation clause in the renewal agreement, and, at the 1983 annual meeting of Box Elder, voted against ratifying the 1982 renewal of the management con-

---

1. C.R.C.P. 54(b) provides, in pertinent part:
   When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

tract. Despite Van Schaack's opposition, the board of directors approved the renewal.

Thereafter, in October of 1985, Van Schaack brought this action against Fulenwider. The amended complaint consists of seven counts or claims for relief, all arising from Fulenwider's actions in causing Box Elder to enter into the 1982 management agreement. The claims are as follows: (1) derivative claim for relief for breach of fiduciary duty; (2) derivative claim for relief for constructive fraud; (3) derivative claim for relief requesting a declaratory judgment; (4) derivative claim for relief requesting rescission of the management contract; (5) derivative claim for relief requesting the imposition of a constructive trust; (6) direct claim for relief for breach of fiduciary duty; and (7) a request for dissolution of the Box Elder corporation.

Immediately after filing suit, Van Schaack requested that a hearing on the dissolution issue be expedited because condemnation of a substantial portion of the airport land was imminent, and tax considerations mandated that the corporation be dissolved before condemnation proceedings commenced. Expedited discovery was ordered, and a hearing on the dissolution claim took place four months after Van Schaack's request. The remaining six claims were scheduled to be tried a year later.

On March 7, 1986, after a five-day trial on the dissolution issue, the trial court ruled that the 1982 agreement unilaterally executed by Fulenwider was a product of self-dealing, was unlawfully adopted by the board of directors, was not ratified by Box Elder shareholders, and was unfair. Furthermore, the court found that the agreement was illegally oppressive, and that payments under it constituted corporate waste warranting entry of a dissolution order. The trial court certified the dissolution order and findings as a final judgment under C.R.C.P. 54(b). The trial court also entered an order appointing L.C. Fulenwider, III as receiver to oversee the dissolution of Box Elder.

Fulenwider obtained a stay of the dissolution order and appealed the trial court's orders.[2] However, while the appeal was pending, Fulenwider signed a Statement of Intent to Dissolve By Written Consent of Shareholders (Statement of Intent) and Articles of Dissolution, which were filed with the Colorado Secretary of State. Fulenwider also filed a motion to lift the stay. Thereafter, the trial court discharged the receiver.

Van Schaack then filed a motion to dismiss the appeals on the ground of mootness. Fulenwider objected, claiming that the trial court's findings remained as disputed issues on appeal because they could affect the remaining claims if left unreviewed. The court of appeals denied the motion on June 16, 1986. Four months later, Fulenwider filed its own motion asking the court to dismiss the consolidated appeals and to vacate the trial court's orders upon which the appeals were based. This motion was denied by the court of appeals with leave to address the mootness issue in the briefs. After oral argument, the court of appeals dismissed the appeals because they were moot and vacated the lower court's judgment. *Van Schaack,* 768 P.2d at 741. We then granted certiorari to review the court of appeals judgment.

II

We first determine if the appeals became moot. A case is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy. *Barnes v. District Court,* 199 Colo. 310, 607 P.2d 1008 (1980). The general rule

**2.** Case No. 86CA0401, which challenged the district court's dissolution order, and No. 86CA0585, which challenged the appointment of a receiver, were consolidated by the court of appeals. Subsequently, the trial court ordered Fulenwider to pay Box Elder's attorney fees and fees for work done by the corporation's accountant. Fulenwider appealed these orders in Nos. 86CA1335 and 86CA1649. The court of appeals reversed the district court's imposition of legal fees upon Fulenwider, but affirmed the order requiring Fulenwider to pay Box Elder's accounting costs. These issues, however, are not before this court. The case before us concerns only the order of dissolution and the order appointing a receiver.

is that when issues presented in litigation become moot because of subsequent events, an appellate court will decline to render an opinion on the merits of an appeal. *See Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974); *Humphrey v. Southwestern Dev. Co.,* 734 P.2d 637 (Colo.1987). We have held that when the appellant complies with a lower court's judgment pending appeal, mooting the question on appeal, the appeal should be dismissed. *Blades v. Sanders,* 158 Colo. 64, 404 P.2d 520 (1965); *Cameron v. Carroll & Co.,* 138 Colo. 432, 334 P.2d 748 (1959). *See also Stenback v. Front Range Financial Corp.,* 764 P.2d 380 (Colo.App.1988); 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.2 (2d ed. 1984).

■ We agree that Fulenwider's challenges to the dissolution order and to the order appointing a receiver were mooted during appeal. By the time the cases were heard by the court of appeals, the corporation was in the process of dissolution. Thus, any determination as to the propriety of the dissolution order or the order appointing a receiver would have no effect. Having concluded that the appeals were moot, we now determine whether the court of appeals applied the proper procedure by vacating the trial court orders.

### III

■ Whether an appellate court should vacate a lower court's judgment upon a determination that an appeal is moot is a matter of procedure which is not expressly addressed by the Colorado Rules of Civil Procedure or the Colorado Appellate Rules. Because our rules do not provide specific guidance, we determine the proper appellate procedure under our appellate authority and our authority of "general superintending control" over inferior courts. Colo. Const. art. VI, § 2. While we are not bound by the federal law on this matter, federal case law is useful as guidance.

When a case becomes moot on appeal, the usual practice is to dismiss the appeal and vacate the lower court's judgment. *Deakins v. Monaghan,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Great W. Sugar Co. v. Nelson,* 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979); *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178 (1936); *Warren v. People ex rel. Stewart,* 144 Colo. 57, 354 P.2d 1021 (1960). In *Munsingwear,* the Court indicated that if a case is mooted on appeal, it is "the duty of the appellate court" to "reverse or vacate the judgment below and remand with a direction to dismiss." *Id.,* 340 U.S. at 39–40, 71 S.Ct. at 106–07. The Court reasoned that this practice "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Id.* at 40, 71 S.Ct. at 107.

Some courts, however, have recognized an exception to this procedure when the appealing party voluntarily takes an action which renders the appeal moot. This exception was created to prevent a party from mooting its appeal for strategic reasons, so as to vacate the lower court's judgment. The rationale most often cited for this exception was stated in *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 721 (9th Cir. 1982):

> If the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books. 'It would be quite destructive to the principle of judicial finality to put such a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right to appeal'.... That possibility would undermine the risks inherent in taking any controversy to trial and, in cases such as this one, provide the dissatisfied party with an opportunity to relitigate the same issues.

(Citation omitted.)

In *Ringsby,* the parties to the litigation settled their differences and agreed that the judgment of the district court should be

vacated and the pending appeal dismissed. The Ninth Circuit dismissed the pending appeal as moot but declined to vacate the judgment. The court found "the distinction between litigants who are and are not responsible for rendering their case moot at the appellate level persuasive." *Id.* at 721.[3]

In *United States v. Garde*, 848 F.2d 1307 (D.C.Cir.1988), the Nuclear Regulatory Commission (NRC) issued a subpoena to a group organized to promote nuclear safety, requesting information on certain safety problems and the names of the whistle-blowers who reported the problems. The district court refused to enforce the subpoena but outlined a procedure by which the NRC could get almost all the information requested. After appealing the district court's refusal to enforce the subpoena, the NRC complied with the alternative procedure for obtaining the information. It then requested that the appeal be dismissed as moot and that the lower court's judgment be vacated. The court of appeals refused to vacate the judgment to prevent the NRC from gaining an unfair advantage by complying with district court's order so as to moot the appeal. *See Wisconsin v. Baker*, 698 F.2d 1323 (7th Cir.1983) (court refused to apply *Munsingwear* when losing party deliberately mooted the question on appeal so as to destroy the preclusive ef-fect of the judgment below); *see also Constangy, Brooks & Smith v. NLRB*, 851 F.2d 839 (6th Cir.1988).[4]

Several courts have decided that the *Ringsby* exception does not apply when the record indicates that the party's actions were not deliberately taken to avoid the preclusive effect of the lower court's judgment. *See Northwest Pipeline Corp. v. FERC*, 863 F.2d 73 (D.C.Cir.1988) (because appealing party opposed finding of mootness and sought resolution of case on merits, not an instance where the losing party deliberately mooted appeal to avoid precedential effect of lower court's ruling, thus exception to *Munsingwear* inapposite); *Kitlutsisti v. Arco Alaska, Inc.*, 782 F.2d 800 (9th Cir.1986) (because there was no indication that appellants mooted the case to avoid the preclusive effect of the district court's judgment, and because it was unlikely that the appellants' action would be rescinded so as to renew the controversy after judgment vacated, *Ringsby* exception inapplicable).

Here, it is clear from the record that Fulenwider did not deliberately manipulate the appellate process in order to obtain a vacation of the lower court's judgment. Rather, Fulenwider's agreement to the dissolution of Box Elder was made solely in response to time constraints imposed by the tax laws.

---

3. The court's refusal to vacate the lower court's judgment in *Ringsby* has been criticized by both courts and commentators. *See Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir. 1985); 13A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3533.10, 431–2 (2d ed. 1984).

4. Both *Constangy* and *Garde* relied on *Karcher v. May*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), as authority for the proposition that *Munsingwear* does not apply when the appeal becomes moot through the act of a party. However, it is not clear that *Karcher* was intended to create such an exception.

In *Karcher*, the New Jersey legislature enacted a "moment of silence" statute. Because no one would defend the statute, Karcher, as Speaker of the New Jersey General Assembly, and Orechio, as President of the New Jersey Senate, intervened on behalf of the legislature. After the district court declared the statute unconstitutional and the court of appeals affirmed, Karcher and Orechio were removed from their positions. The new Speaker and President then informed the Supreme Court that they were "withdrawing the legislature's appeal." Upon dismissing the appeal for want of jurisdiction, the Court held that its procedure under *Munsingwear* would not apply. The Court emphasized that the controversy did not become moot due to happenstance. Rather, the controversy ended when the legislature declined to pursue its appeal.

Thus, *Karcher* did not involve a case which became moot upon appeal. Significantly, the persons who succeeded to the legislative positions of the previous parties declined to pursue the appeal. Thus there, the appeal was abandoned, whereas here, no voluntary relinquishment of the right to appeal has taken place. *See Long Island Lighting Co. v. Cuomo*, 888 F.2d 230, 234 n. 4 (2d Cir.1989). However, because we find it inappropriate to deviate from *Munsingwear* under the facts of this particular case, we need not address the effects of *Karcher* on the mootness doctrine.

From the very beginning, tax considerations have controlled the parties' actions in connection with this dissolution issue. Count VII of the amended complaint stated that dissolution was requested because it "would result in substantial tax savings to Box Elder and its shareholders." Immediately after filing suit, Van Schaack requested that the dissolution issue be expedited because condemnation was imminent, and

> Pursuant to provisions of the Internal Revenue Code, the Van Schaack Group and Fulenwider Group each stand to gain tax savings of millions of dollars by dissolving Box Elder before Denver acquires any Box Elder property ... provided dissolution is completed within one month and before condemnation occurs. If dissolution is not granted and so completed prior to such acquisition or substantive negotiations leading thereto, the parties will each be faced with substantial capital gains taxation on the proceeds of sale or condemnation.

Based on "the exigencies created by the Internal Revenue Code," discovery and the dissolution hearing were expedited.

The trial court's order of dissolution was expressly drawn to comply with the applicable Internal Revenue Code sections. Fulenwider's request that the dissolution issue be certified under C.R.C.P. 54(b), and that the order be stayed, was also motivated by the time constraints imposed by the tax consequences. Fulenwider's motion contained the following statement:

> Defendants will seek an expedited appeal and, in accordance with the letter of James W. Spensley attached hereto, no taking of property for the new airport by the City and County of Denver is planned until July 1986. Therefore, the risk of adverse tax results feared by plaintiffs will not occur if the dissolution of Box Elder Farms Co. is delayed pending an expedited appeal.

Fulenwider filed its appeal the day after the trial court certified the dissolution order as final. On March 31, 1986, the court of appeals stayed the trial court's dissolution order, but denied Fulenwider's request for an expedited appeal. This refusal to expedite the appeal almost guaranteed that the dissolution issue would not be decided before condemnation proceedings were instituted. On May 21, 1986, Fulenwider signed the Statement of Intent and Articles of Dissolution, which were filed with the Colorado Secretary of State. Fulenwider also filed a motion to lift the stay.

In its response to Van Schaack's motion to dismiss, Fulenwider clearly stated its reasons for acquiescing in the dissolution of Box Elder:

> Subsequent to the filing of these appeals ... appellants obtained a ruling from the Internal Revenue Service indicating that L.C. Fulenwider, Inc. would, along with appellees, be able to take advantage of a section 333 liquidation.... Since the condemnation process has begun in earnest, the risk of adverse tax consequences has substantially increased. Accordingly, on May 21, appellants moved this Court to lift its Stay ... and the Company filed its Statement of Intent to Dissolve with the Secretary of State.

On this basis, it is clear that Fulenwider did not agree to the dissolution so as to moot the appeal and vacate the lower court's decision. Rather, a choice had to be made immediately, and no time was left to wait for a decision on appeal. Moreover, in light of the impending condemnation, Fulenwider was placed in the position of giving up its appeal or facing liability on its supersedeas bond if the trial court's judgment was affirmed after that narrow window of opportunity for dissolution had passed. Although Fulenwider's actions in complying with the dissolution order were "voluntary" within the strict sense of the word, it is clear that this is not the type of deliberate action contemplated by those cases which create an exception to *Munsingwear* when a party voluntarily moots its appeal.

Both the *Munsingwear* rule and any possible exception to that rule are equitable in nature. *National Union Fire Ins. Co. v. Seafirst Corp.,* 891 F.2d 762 (9th Cir.1989). Given the history of this case, it is inequitable to hold Fulenwider to the unre-

viewed findings of self-dealing and waste which, if allowed to stand, will effectively determine the outcome of the six remaining claims.

Further, the discovery process and trial preparation for a very complex case were condensed into a short period of time. While such procedures may have been necessary to prepare for the limited issue of dissolution, it is unreasonable to deprive Fulenwider of the chance to defend itself after full discovery and adequate preparation. *See Restatement (Second) of Judgments* § 28(5)(c) (1982) (relitigation of an issue is not precluded when "the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action").

It is also clear from the record that both the parties and the trial court intended to limit the hearing and the court's findings solely to the dissolution issue. At trial, the following conversation took place between the court and counsel for Van Schaack:

THE COURT: When I decide this, is this going to dispose of the lawsuit or is this just part?

MR. GOLDBERG: Just part of the lawsuit because we do have other claims for mismanagement and damages that are set for a trial in February of 1987.

THE COURT: It does seem like kind of a waste to spend a week on this and not dispose of the lawsuit, doesn't it?

MR. GOLDBERG: Well, we don't think so, Your Honor, because we believe if dissolution can be granted at this point in time the tax benefits to the parties will be maximized versus having dissolution entered in 1987.

THE COURT: My question was simply why you couldn't try the whole thing this week instead of putting some of it off till 1987.

MR. GOLDBERG: Well, it wasn't set for that and we still have additional discovery to do on the matter of damages.

The trial court later made it clear that its findings applied only to the dissolution claim. After outlining the history of the dispute, the court stated "[t]here are seven claims in the complaint filed by the plaintiffs in this case. We are concerned in this hearing with only the seventh claim for relief, and that is where the plaintiffs seek to have the corporation dissolved." The court then proceeded to make the disputed findings of fact. In light of the manifested intent of the parties and the court to limit the expedited hearing and findings to the dissolution issue, it would now be unfair to give such findings preclusive effect.

Van Schaack also took the position on appeal that the trial court's findings would have no preclusive effect on the remaining issues. In its motion to dismiss the appeals as moot, Van Schaack stated:

The findings of fact and conclusions of law of the District Court's Order presently under appeal are no more binding upon it than in a situation where findings of fact and conclusions of law would be made in a preliminary injunction hearing for the purposes of a permanent injunction proceeding. Furthermore, there is no danger of res judicata or collateral estoppel arising from the District Court's Order because there is no second action to which it is sought to be applied.

In response to Fulenwider's contention that the appeals were not moot because the trial court's findings of misfeasance would have a preclusive effect on the remaining claims, Van Schaack reiterated its position that:

[The] Order is not binding upon the District Court in the trial of the damage and equitable claims scheduled for April 20, 1987. The District Court hearing was conducted only on the claim of dissolution of the Company. The order was akin to preliminary injunctive findings that are not final and binding upon the same court in a permanent injunction proceeding or upon trial of related damage claims.... As a result, the Order governs the dissolution claim and nothing else.

. . . .

As a result, dismissal of these consolidated appeals is warranted since the doc-

trine of collateral estoppel does not apply....

Only after Fulenwider submitted its own motion to dismiss the appeals and vacate the lower court's judgment based on *Munsingwear* did Van Schaack argue, for the first time, that the trial court's judgment was preclusive on the liability issue in the remaining claims for relief.

Because Van Schaack has consistently taken the position that the trial court's findings were limited solely to the dissolution issue and would not control the issue of liability on the remaining claims, it is now improper to give such findings preclusive effect. In effect, based on its earlier inconsistent position, Van Schaack has waived the right to assert that the findings are preclusive upon trial of the remaining claims.

Courts have also declined to apply the *Ringsby* exception when the action taken by the party which moots the appeal, by its own terms, also prevents relitigation of the issue. *Harrison Western Corp. v. United States*, 792 F.2d 1391 (9th Cir.1986); *see also Kitlutsisti v. Arco Alaska, Inc.*, 782 F.2d 800 (9th Cir.1986). Here, the decision to dissolve a corporation cannot be undone. Therefore, the dissolution issue can never be relitigated.

We also rely on our opinion in *Warren v. People ex rel. Stewart*, 144 Colo. 57, 354 P.2d 1021 (1960), to support our decision. There, the appellant, who was the subject of a quo warranto proceeding, resigned from office voluntarily while the appeal was pending. The right of the appellant to hold the office of county commissioner was the only issue before the court. Holding that the appeal was moot, we remanded the cause to the trial court with directions to vacate the judgment. We see no reason that this course of action should not be taken here.

Based on the equities in this case, we decline to reverse the court of appeals determination that the trial court's judgment should be vacated. We note that our decision does not mandate that the evidence which has already been presented must be reproduced. This remains within the trial court's discretion. Having heard the testimony already, the court is free to limit the presentation of evidence to that which was not produced before. We simply hold that the trial court's former findings are not binding on the remaining issues. This gives the trial court flexibility and allows the findings to be reviewed on appeal, if necessary.

## IV

■ The court of appeals held that, while the appeal was pending, the parties voluntarily entered into a settlement which resulted in the dissolution of Box Elder. The court concluded that "[w]hen a judgment is made part of a settlement agreement, it is merged in and superseded by the settlement agreement, and is thereafter extinguished." *Van Schaack*, 768 P.2d at 743 (citing *Young v. Carpenter*, 757 P.2d 148 (Colo.App.1988)).

We are not persuaded that Fulenwider's decision to comply with the trial court's dissolution order constituted a settlement. Compliance with a judicial order does not constitute a settlement. A settlement results from a meeting of the minds and an exchange of sufficient consideration. *Cross v. District Court*, 643 P.2d 39 (Colo. 1982); *H.W. Houston Constr. Co. v. District Court*, 632 P.2d 563 (Colo.1981). We find from the record no meeting of the minds occurred with regard to the scope of the alleged compromise. Further, no consideration was exchanged because Fulenwider was simply complying with a preexisting duty. Both the Statement of Intent and the Articles of Dissolution, which were filed with the Colorado Secretary of State, specifically stated that the dissolution occurred "pursuant to order of the Denver District Court." Nor does it appear that Van Schaack made any concessions which would support a finding that consideration had been exchanged. Since the parties did not enter into a settlement agreement, no judgment could be merged into or superseded by it and thereby be extinguished.

The judgment of the court of appeals is affirmed, and the case is remanded to the court of appeals with instructions to re-

mand the case to the district court for trial on the remaining issues.

MULLARKEY, J., dissents.

QUINN and VOLLACK, JJ., join in the dissent.

Justice MULLARKEY dissenting:

I respectfully dissent from the majority's opinion which holds that the trial court's order and findings should be vacated because this appeal became moot due to Fulenwider's compliance with the trial court's order. Because Fulenwider did not pursue its C.R.C.P. 54(b) appeal of the dissolution order, the findings of the trial court are entitled to preclusive effect to the extent that they are relevant to the remaining claims. Accordingly, I would reverse the judgment of the court of appeals.

## I.

The majority cites *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), for the usual rule to be followed by appellate courts when a case becomes moot on appeal. According to the majority, the appeal is to be dismissed and the trial court judgment vacated unless the appellate court finds that the appellant mooted the appeal to "deliberately avoid the appellate process in order to obtain a vacation of the lower court's judgment." Maj. op. at 428. Having adopted *Munsingwear*, the majority reviews numerous cases which have provided exceptions to the *Munsingwear* rule, attempts to distinguish these exceptions from the facts at hand, and holds that the *Munsingwear* rule is appropriate in this case. I disagree.

### A.

I view *Munsingwear* as of questionable value. It has become so riddled with exceptions that it can hardly be characterized as a rule. *See* 13A C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3533.10 (2d ed. 1984 and 1990 Supp.) (discusses numerous exceptions to *Munsingwear*). The fact that so many decisions written after *Munsingwear*, including later decisions by the Supreme Court itself, have created various exceptions to *Munsingwear* reflects its analytical weakness and makes it very difficult to apply. In my view, we should not follow *Munsingwear*. The general rule ought to be that the trial court's judgment stands if, for whatever reason, a case becomes moot on appeal. Such a rule would be easy to apply and the exceptional case could be handled on remand by the trial court which would apply the normal rules allowing a judgment to be set aside. *See* C.R.C.P. 60(b). This approach would put the fact finding in the trial court where it belongs and would avoid placing an appellate court in the impossible position of determining, without an evidentiary hearing, the appellant's motive for abandoning its appeal.

### B.

Even taking *Munsingwear* as the rule, the decision of the court of appeals should be reversed. *Munsingwear* applies only when the appeal becomes moot through "happenstance" and mootness here occurred because of Fulenwider's actions, not because of happenstance. Thus, *Munsingwear*, by its own terms, does not apply to this case. Further, I disagree that the cases cited by the majority as exceptions to *Munsingwear* are easily distinguished. In my view, the reasoning of these cases supports the conclusion that the trial court judgment should *not* be vacated.

The majority cites *United States v. Garde*, 848 F.2d 1307 (D.C.Cir.1988), *Constangy, Brooks & Smith v. NLRB*, 851 F.2d 839 (6th Cir.1988), and *Wisconsin v. Baker*, 698 F.2d 1323 (7th Cir.1983), for the proposition that an exception to *Munsingwear* applies when the losing party deliberately moots the question on appeal so as to destroy the preclusive effect of the judgment below. From a review of these cases, I do not find that the holdings depend on the appellant's illicit motives, and I do not discern that the courts have distinguished between appellants who simply have mooted an appeal voluntarily and appellants who have mooted an appeal voluntarily with the intent to manipulate the appellate process. Rather, I find these cases to be

factually similar to the case at hand and to provide an analytically sound basis for not applying *Munsingwear* to this case.

In *Constangy*, a law firm brought a Freedom of Information Act action against the National Labor Relations Board (NLRB) for production of certain documents. The NLRB was ordered to produce the records and it appealed. The Sixth Circuit held that, when the appeal became moot because the NLRB complied *in toto* with the district court's production order, it would be inappropriate to vacate the district court's order in light of the law firm's motion for attorney fees pending before the district court. 851 F.2d at 842. In so holding, the Sixth Circuit relied on *Karcher v. May*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), as providing an exception to *Munsingwear* when mootness was due to failure of the proper party to pursue an appeal. *Id.* The majority rejects *Karcher* because, as the majority points out at maj. op. p. 428, fn. 4, *Karcher* is based on jurisdictional principles rather than mootness. However, *Karcher* has been cited in numerous cases for the principle that the *Munsingwear* rule is not applicable when the controversy did not become moot due to happenstance but rather when a litigant is responsible for rendering its case moot. *See Allard v. DeLorean*, 884 F.2d 464, 467 (9th Cir.1989); *United States v. Garde*, 848 F.2d 1307, 1311; *Constangy*, 851 F.2d 839, 842. *Karcher* plainly has been extended beyond its facts and its analysis should apply to the case now before us.

Similarly, in *Garde*, the Nuclear Regulatory Commission (NRC) appealed the district court's refusal to enforce a subpoena requesting information on safety problems and the names of certain whistleblowers. However, pending appeal, the NRC complied with the district court's alternate procedure for obtaining the information. The court of appeals refused to vacate the lower court judgment to prevent the NRC from gaining an unfair advantage by complying with the district court's order so as to moot the appeal. The court asserted "[t]he distinction between litigants who are and are not responsible for the circum-

stances that render the case moot is important." *Garde*, 848 F.2d at 1311.

In *Wisconsin v. Baker*, the Seventh Circuit held that "[c]ircumstances beyond defendants' control have not prevented them from exercising their right of appeal from the judgment below." *Id.*, 698 F.2d at 1330. The court further found that the defendants exercised that right by filing a notice of appeal and later voluntarily attempted to waive the sovereign immunity defense in "the apparent hope of escaping the preclusive effect of the district court's rejection of that defense." *Id.* Although the court noted that the appellant's voluntary attempt to waive its already litigated defense may have been for manipulative reasons, the holding in *Baker* was not based on this distinction. Rather, its analysis is applicable to this case and encourages an exception to the *Munsingwear* rule when a party voluntarily moots the appeal. The *Baker* court compared the case before it to the situation in which the losing party simply chose not to appeal or abandoned its appeal. Observing that the judgment would stand in those cases, the court stated:

> [w]e see no reason why it should be otherwise when defendants file a notice of appeal and then purport to waive a defense advanced and thoroughly litigated before the district court. Defendants gambled when they chose to litigate the sovereign immunity issue in district court and they lost. Just as winning litigants may not bolster the preclusive effect of final judgments by deliberately mooting questions on appeal, so losing litigants may not destroy their preclusive effect by adopting the same ploy. Whether sovereign immunity bars this suit was a live issue when the district court decided it, and defendants' change of heart on appeal has not effected a loss of life below.

*Id.*, 698 F.2d at 1330–31 (citations omitted).

Several other cases cited by the majority lend support for the view that *Munsingwear* is not applicable when a party has changed its position causing an appeal to be mooted. The court in *Kitlutsisti v.*

*Arco Alaska, Inc.,* 782 F.2d 800 (9th Cir. 1986), noted that an exception to *Munsingwear* was not applicable when the mooted appeal did not result from the appellants' changed positions. Also, in *Northwest Pipeline Corp. v. FERC,* 863 F.2d 73 (D.C. Cir.1988), the court applied the *Munsingwear* rule because the appellant had continued to oppose a finding of mootness by the court of appeals and had sought a resolution of the case on the merits. Accordingly, the court placed emphasis on the fact that the appellant was not responsible for rendering the case moot. *See also Center for Science in the Public Interest v. Regan,* 727 F.2d 1161, 1166 (D.C.Cir.1984) ("When the appellant, here the Department [of Treasury], causes the dismissal of its own appeal, it 'is in no position to complain that [its] right of review of an adverse lower court decision has been lost,'" (*citing Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 722 (9th Cir.1982))).

The majority asserts that Fulenwider's actions do not fall within the cases creating an exception to *Munsingwear.* The majority states that "it is clear from the record that Fulenwider did not deliberately manipulate the appellate process in order to obtain a vacation of the lower court's judgment. Rather, Fulenwider's agreement to the dissolution of Box Elder was made solely in response to time constraints imposed by the tax laws." Maj. op., p. 428. By reaching this conclusion, the majority engages in appellate fact finding which I find inappropriate. Contrary to the majority's implication, there is no "record" for this court to scrutinize regarding Fulenwider's motives for mooting the appeal. The majority simply accepts Fulenwider's assertion that it was motivated by tax considerations. Having accepted this assertion, the majority then finds Fulenwider's motive to be acceptable and not an attempt to "deliberately manipulate the appellate process." I do not know how an appellate court can probe a party's motives and decide whether an asserted motive might be a sham. I think the majority may have constructed a test which is impossible to apply. If so, a trial court's judgment will always be set aside when a case becomes moot on appeal as long as the appellant alleges some motive for its actions other than a deliberate attempt to moot the appeal.

Further, despite Fulenwider's alleged reasons for complying with the dissolution orders, the fact remains that Fulenwider fully defended the dissolution claim and then changed its position pending appeal. The trial court, having the benefit of a five-day trial with extensive testimony, made detailed evidentiary findings. For whatever reason, Fulenwider abandoned its appeal. Although tax considerations may have controlled the parties' actions in connection with the dissolution issue, such tax considerations were not responsible for mooting the appeal. Rather, potential tax consequences were factors which the parties could consider in planning their litigation strategy.

Accordingly, I read *Garde, Constangy,* and *Baker* as similar to the facts in this case and I do not distinguish them on the grounds that the appellants in those cases mooted the appeal for a manipulative or strategic purpose. Rather, I find that the more persuasive distinction under the *Munsingwear* rule lies between litigants who are and are not responsible for rendering their case moot at the appellate level. *See Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d at 721; *see also Munsingwear,* 340 U.S. at 40, 71 S.Ct. at 107 (if a case is mooted on appeal, the appellate court should vacate the judgment below and remand with directions to dismiss; this practice "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through *happenstance*" (emphasis added)). Thus, I would conclude that the principles of *Munsingwear* are inapplicable in this 54(b) appeal where the issues appealed are mooted due to Fulenwider's voluntary decision not to pursue its appeal, and when there are remaining issues to be tried.

## II.

I also find that the majority's opinion is inconsistent with the character of C.R.C.P.

54(b) appeals when the majority relies in part on the principles of equity rather than the application of *res judicata*[1] which is inherent in 54(b) appeals. In my opinion, the determination of whether the trial court's findings in the dissolution claim should be preclusive as to the remaining claims is dependent on the legal doctrine surrounding 54(b) appeals. The basic purpose of 54(b) is to avoid the potential injustice of a delay in entering judgment on a distinctively separate claim or as to fewer than all the parties by making an immediate appeal available prior to the final adjudication of the entire case. 10 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2654 (2d ed. 1983). An appeal following a 54(b) order is the exception rather than the rule and "the limitations on its availability mean that there is relatively little chance that the appellate court will be forced to consider the same issues on successive appeals." *Id.* at p. 38. Furthermore, Rule 54(b) orders are viewed as final judgments to which the principles of *res judicata* apply. *Id.,* § 2661, at p. 128.

The majority implies that equitable considerations in this case require an exception to the general rule of *res judicata.* I see no such injustice. In my opinion, we should not waive the application of *res judicata* just because the parties failed to realize and properly assess the implications of a 54(b) appeal.

There are two sides to the equity argument. *Munsingwear* and the cases creating exceptions to *Munsingwear* frequently have emphasized the unfairness which would result to the prevailing party if the trial court's judgments were vacated and thus "wiped from the books." *See Ringsby,* 686 F.2d at 721; *Constangy,* 851 F.2d

at 842; *Harrison Western Corp. v. United States,* 792 F.2d 1391 (9th Cir.1986) (no "*Ringsby* problem" here because there is no possibility that the appellants will relitigate the issue already decided by the district court); *Kitlutsisti,* · 782 F.2d 800 (*Ringsby* analysis inapplicable in part because no likelihood that controversy will be renewed). The majority is concerned about the inequities in holding Fulenwider to the unreviewed findings of "self dealing and waste which, if allowed to stand, will effectively determine the outcome of the six remaining claims." Maj. op. at 430. However, the majority neglects the inequities which would result to Van Schaack by vacating the trial court's detailed findings of fact and conclusions of law.

The majority dismisses the inequity which will be done to Van Schaack by claiming that Van Schaack has waived its right to assert that the findings are preclusive upon the remaining claims. The majority notes that Van Schaack's legal position has been inconsistent because, prior to Fulenwider's voluntary dismissal of its appeal, Van Schaack took the position that the trial court's findings were limited solely to the dissolution issue and would not control the issue of liability. However, the majority fails to mention that Fulenwider, too, switched its position. If Van Schaack somehow is tainted by not maintaining a consistent position, so is Fulenwider. Prior to its compliance with the dissolution order Fulenwider maintained that the findings would be preclusive below. In Fulenwider's response to Van Schaack's Motion to Dismiss Consolidated Appeals, Fulenwider stated:

> Basic tenants [sic] underlying *res judicata* and collateral estoppel, moreover, dictate that findings of fact cannot be dis-

---

**1.** The parties, as well as cited authority, have used interchangeably the terms *res judicata,* collateral estoppel, and issue preclusion. I do not attempt to distinguish the intricacies of these legal principles here. Rather, *res judicata* in this case generally "deals with the effect of a judgment on the underlying claim or cause of action" and "precludes relitigation of the claims as to either issues of law or fact, if such issues could have been raised and determined." 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal*

*Practice* ¶ 0.401 at p. 4 (2d ed. 1988). Collateral estoppel and issue preclusion, on the other hand, are often viewed as a part of the general doctrine of *res judicata* and deal "with the limits imposed on relitigation by a party to a final judgment, or one in privity with a party, of issues decided adversely to him, when such issues arise in a subsequent litigation on a claim or cause of action not barred by *res judicata.*" *Id.*

puted in a subsequent action, even when reached as the result of an erroneous view of the facts, an erroneous application of law, or even when the purpose or subject matter of a subsequent action differs.... Unless the District Court Judge's findings of fact and conclusions of law regarding the validity of the management agreement, oppressive conduct of the appellants, and corporate waste are redressed by this Court, appellees will be entitled to depend upon the District Judge's findings.

(Citations omitted.)

This, of course, is not the first time we have been confronted with parties who asserted contrary positions in the course of a case. *See, e.g., Gramiger v. Crowley,* 660 P.2d 1279, 1280, n. 1 (Colo.1983). Here it seems that the parties' predicament resulted in part from erroneous understandings of the relevant legal principles. The parties questioned the preclusive effect of the court's findings in the 54(b) appeal and both parties have conveniently changed their positions at various times as to whether *res judicata* or collateral estoppel would arise from the district court's order. This fact hardly tips the equities in favor of Fulenwider. Moreover, I do not agree that the record clearly indicates that both parties and the trial court intended to limit the hearing and the court's findings solely to the dissolution issue. Any such intent was not expressly stated and there is no discussion directly pertaining to the preclusiveness of the court's findings.

Finally, the majority asserts that the judgment should be vacated, but it notes that the trial court should have discretion to limit the presentation of evidence to that which was not produced before. Although I would hold that once the same parties have litigated the same issue in the same court and in the same adversary posture, the principles of *res judicata* or issue preclusion apply, there are exceptions to the general rules of issue preclusion and *res judicata* when justice and fairness require. *See Restatement (Second) of Judgments* § 28, at pp. 273–274 (1982); 18 C. Wright, A. Miller, M. Cooper, *Federal Practice and Procedure* § 4416; *see also United States*

*v. LaFatch,* 565 F.2d 81, 83 (6th Cir.1977) (*res judicata* may be set aside when its application would result in "manifest injustice," and would "violate overriding public policy"); *Moch v. East Baton Rouge Parish School Bd.,* 548 F.2d 594, 597 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977). Accordingly, although I would hold that the findings of the trial court are preclusive, Fulenwider might be able to relitigate the issues or provide further evidence if, in the trial court's opinion, fairness and justice so require. I would leave that decision to the trial court's sound discretion. I see no reason to vacate the trial court's judgment.

Accordingly, I dissent.

QUINN and VOLLACK, JJ., join in this dissent.