In re the MARRIAGE OF Ronald Glenn
HARTLEY and Ivonne Lee Hartley,
and Concerning Eric Hartley.

Eric HARTLEY, Petitioner,

v.

Ronald Glenn HARTLEY and Ivonne
Lee Hartley, Respondents.

No. 93SC625.

Supreme Court of Colorado,
En Banc.

Dec. 5, 1994.

As Modified on Denial of Rehearing
Jan. 17, 1995.

Seth A. Grob, Children's Legal Clinic, Denver, for petitioner.

Ivonne Lee Hartley, pro se.

Ronald Glenn Hartley, pro se.

Eugene P. Falco, Litchfield, CT, for amici curiae Nat. Task Force for Children's Constitutional Rights, Legal Action Project of the Nat. Committee for the Rights of the Child, Nat. Ass'n of Counsel for Children, Child Advocacy Law Clinic, University of Michigan Law School.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review an unpublished opinion of the court of appeals, *In re the Marriage of Ronald Glenn Hartley, and Ivonne Lee Hartley, and concerning Eric Hartley*, No. 92CA1177 (Colo.App. August 19, 1993) (not selected for official publication). At issue in this case is the right of a minor child to be represented by the attorney of his choice in a custody dispute arising under the Uniform Dissolution of Marriage Act (UDMA). We reverse the court of appeals' holding that the issue was moot because of a subsequent custody decision by the trial court and also hold that a minor child's interests are adequately represented under the UDMA.

I.

■ On November 1, 1989, Ronald Hartley (father) filed a petition for dissolution of the marriage from his spouse, Ivonne Hartley (mother). In 1989, the father requested the trial court to award him sole custody of their two minor children, Chad, a fourteen year old, and Eric, a twelve year old.[1] In her response to the petition, the mother requested that she be awarded custody, maintenance and child support. On January 24, 1990, as a result of a stipulation between the father and the mother, the trial court appointed an attorney (guardian ad litem or GAL) to represent the interests of the two children, pursuant to section 14–10–116, 6B C.R.S. (1987 & 1994 Supp.).[2]

1. This case concerns only the younger son Eric.

2. Section 14–10–116 states:
   **Representation of child.** The court may, upon motion of either party or upon its own motion, appoint an attorney to represent the interests of a minor or dependent child with respect to custody, support, and parenting time. The court shall enter an order for costs, fees, and disbursements in favor of the child's attorney. The order shall be made against any or all of the parties; except that, if the responsible party is indigent, the costs, fees, and disbursements shall be borne by the state.

   As this provision makes clear, the person appointed to represent a child under the UDMA must be an attorney. Although the statute does

A hearing was held on February 15, 1990, and the parents were awarded temporary joint custody of both children. On June 25, 1991, a trial commenced to resolve the permanent custody issues. On that day, the parents entered into a stipulation, consistent with the recommendations of the GAL, granting sole custody of the two children to the mother with visitation rights for the father. The trial did not conclude on that day, however, and was continued until December 4, 1991.

On September 29, 1991, Eric sent a letter to the GAL in which he expressed frustration over the representation of his interests. Eric explained that he did not want to live with his mother under any conditions, that he felt physically and psychologically abused by her, and that he felt the GAL was not representing his interests to the trial court. Eric further stated that he was terminating the GAL's services. Eric sent another letter to the trial court judge, along with a copy of his letter to the GAL, in which he explained that he had fired his GAL because of the handling of his case.

On October 7, 1991, the trial court entered a temporary order requiring that Eric be permitted to live with his father until further order of the court. On November 4, 1991, the trial court entered an interim order awarding sole custody of Eric to the mother with modified visitation rights for the father. On December 4, 1991, the trial on the permanent orders concluded, and the trial court awarded permanent sole custody of the children to the mother.

Eric continued to experience substantial difficulty in his living arrangements with his mother after the trial on the permanent orders. A copy of a summons and complaint in the record indicates that the mother's live-in boyfriend was criminally charged on December 15, 1991, with assaulting Eric. Although charges ultimately were dismissed, numerous other incident reports in the record detail various police and social services responses to domestic altercations between Eric and his mother. In response to these problems, the trial court ordered a custody evaluation for Eric on April 10, 1992.[3]

On the same day as the order for a custody evaluation, the Children's Legal Clinic (CLC) filed an entry of appearance on Eric's behalf and asked the court to change sole custody of Eric from the mother to the father. The mother opposed CLC's entry of appearance for Eric on the grounds that an attorney had been appointed to represent Eric's interests. She also filed a motion opposing the motion to modify the custody orders.

On June 15, 1992, the trial court denied CLC's motion to enter its appearance on Eric's behalf. The trial court held that an attorney had been appointed to represent Eric's interests with respect to custody, support and visitation and that another attorney was unnecessary. The court also held that the GAL is bound to the best interests criteria set forth in section 14–10–124, 6B C.R.S. (1987 & 1994 Supp.), under which the wishes of the child were simply one of the elements to be considered. Finally, the trial court denied a motion by CLC to permit Eric to proceed *in forma pauperis*. The trial court resolved the custody arrangements on November 5, 1992, when it awarded sole custody to the father and suspended all court-ordered visitation between Eric and his mother.

Eric, represented by CLC, appealed to the court of appeals from the trial court's order denying CLC's entry of appearance. In an unpublished decision, the court of appeals declined to render a decision on the merits because the issue presented by Eric was moot. The court of appeals held that since Eric was now in his father's custody and his mother was not granted any visitation rights, Eric received what he desired, and CLC's attempted entry of appearance for purposes of modification of custody was a moot issue. Thereafter, we granted Eric's petition for writ of certiorari to review the court of appeals' decision.

We disagree with the court of appeals and hold that the issue is not moot. On the

---

not refer to the attorney as a guardian ad litem or GAL, the parties have used that terminology, and we also do so in this opinion.

3. Custody evaluations are permitted upon motion by the court or either party under § 14–10–127, 6B C.R.S. (1987 & 1994 Supp.).

merits of the claim, we hold that a child is adequately represented by the statutorily-appointed attorney and that such representation satisfies all constitutional requirements.

## II.

■ The court of appeals did not reach the merits of this case because it found that the issue of Eric's representation was mooted by the trial court's ruling awarding custody to Eric's father. Appellate courts will not render opinions on the merits of an appeal when the issues presented become moot because of subsequent events. *American Drug Store, Inc. v. City and County of Denver*, 831 P.2d 465, 469 (Colo.1992); *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426–27 (Colo.1990). "A case is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy." *Van Schaack Holdings, Ltd.*, 798 P.2d at 426. Because we find that a judgment would have a practical legal effect, we hold that the issue is not moot.

■ The issue of Eric's right to representation by counsel is not moot because he is still a minor subject to the jurisdiction of the trial court in matters of custody, support and parenting time. A court retains jurisdiction over child custody issues under the UDMA until the child reaches the age of emancipation.[4] *See Koltay v. Koltay*, 667 P.2d 1374, 1376 (Colo.1983) (attainment of age of 21 creates presumption of emancipation); *Gonzales v. District Court*, 629 P.2d 1074, 1076 (Colo.1981) (court has continuing jurisdiction over a dissolution of marriage case).

In this case, CLC filed an entry of appearance on Eric's behalf and simultaneously filed a separate motion to modify custody of Eric. The entry of appearance was not expressly limited to the motion to modify custody. In the April 10, 1992, custody hearing, CLC stated that it did not intend to represent Eric in the same capacity as the GAL:

> I think clearly we do have a conflict here, and Eric has contacted the guardian ad litem on numerous occasions asking for certain remedies.
>
> One of those remedies is to ask for a change of custody, and Mr. Prentiss [the appointed attorney] is under no obligation to follow direct wishes as he represents—direct wishes as he [Mr. Prentiss] represents his [Eric's] best interests. Therefore Eric needs an attorney for this Court to hear what he wants.

CLC's statement and the unrestricted nature of its motion demonstrate that CLC seeks to represent Eric's wishes whenever they conflict with the appointed attorney's opinion.[5] Indeed, even the GAL conceded that such ongoing representation might be helpful.[6]

Furthermore, because of the nature of this case, it is likely that the issues of custody, visitation, and support will arise periodically until Eric is emancipated. The record reflects that Eric has moved frequently between his mother and his father since the beginning of these proceedings in 1989.[7] If the custody issue arises again, another dispute between the GAL and Eric as to Eric's "best interests" is probable. As such, the representation of Eric's "interests" in the

---

4. Contrary to CLC's assertion, the age of emancipation is normally 21 years of age. *See* § 2–4–401(b), 1B C.R.S. (1980); *In re Marriage of Huff*, 834 P.2d 244, 249 (Colo.1992) (holding that the General Assembly intended to give trial court jurisdiction over custody, support and visitation issues until the age of twenty-one); *In re Marriage of Plummer*, 735 P.2d 165, 166 (Colo.1987).

5. In the April 10, 1992 hearing, CLC asserted, "the child is the one who is most directly impacted by *any* decision [the trial court] makes." (emphasis added).

6. The GAL stated:
   It's clear if the Court talks to Eric that I don't mouth to the Court his position on this. My recommendations have often been against

what his desires are. The other side of the coin is it's fairly obvious that counsel [CLC] is being paid for by Mr. Hartley. I guess we could clarify but Eric Hartley doesn't have his own funds. Mr. Hartley is paying the Children's Legal Clinic to pay the attorney. *It may make my job easier if he's involved because then Eric will have someone telling the Court what he wants to do and representing his position, and then I'll go ahead and proceed to represent what I believe is in the child's best interests.* (emphasis added).

7. Also, although not reflected in the record, the mother asserts in her brief to this court that Eric returned to her custody in November 1993.

underlying proceeding has not concluded and, even though the single motion concerning his custody was resolved, the right to representation is still at issue.

### III.

Having determined that this issue is not moot, we will address the substantive issues presented by Eric but not reached by the court of appeals. Eric makes various arguments to show that he has a statutory right to choice of counsel and independent representation of his wishes. We will address each argument in turn.

### A.

■ Eric asserts that the right to retain counsel of choice and to initiate proceedings regarding his welfare is a statutory right provided under section 14–10–123.4, 6B C.R.S. (1987), which states:

**Rights of children in custody matters.** The general assembly hereby declares that children have certain rights in the determination of custody, including the right to have such determination based upon the best interests of the child.

Eric argues that the "rights" described in section 14–10–123.4 at the very least include the right to participate through chosen counsel and to initiate proceedings. We disagree.

The General Assembly enacted section 14–10–123.4 after the UDMA became the law of Colorado. See Ch. 110, sec. 1, 1987 Colo. Sess.Laws 574, Act Approved March 26, 1987. The 1987 changes to the UDMA were initiated to reform the system of joint custody. Although the hearings are in large part missing or inaudible, the existing portions of the House hearings demonstrate that the legislature's main concern was to control domestic violence while maintaining family relationships. The primary area of discussion focused on reformation of existing joint custody laws to achieve this goal. Legislative Tapes of House Judiciary Committee Hearings, January 13, 1987, at 3:41 p.m.

The legislature also was concerned about protecting the medical needs of children. To this end, the legislature added a portion to section 14–10–123.5, stating that:

In the event of a dispute about the necessity of or the type of medical treatment provided to the minor child or children, either parent shall be allowed to obtain necessary medical treatment for the minor child or children without being in violation of the joint custody order or in contempt of court.

§ 14–10–123.5, 6B C.R.S. (1987).

The legislature added text to the "best interests of the child" determination:

The court, upon the motion of either party, or upon its own motion, may order joint or sole custody after making a finding that joint or sole custody would be advantageous to the child and in his best interests.

Ch. 110, sec. 3, 1987 Colo.Sess Laws. The legislature also added paragraphs to address abuse and uncooperative parents. See ch. 110, 1987 Sess.Laws.

The changes and the limited history of the 1987 amendments to the UDMA in Colorado demonstrate that the "rights" of the child with which the legislature was concerned were the rights to family relationships and the right to be safe from physical, psychological, and emotional harm. See generally, La-Shawn v. Dixon, 762 F.Supp. 959 (D.D.C. 1991) (children have right to "safe placements in which they will not be harmed" and that harm includes physical, psychological and emotional harm).

The rights protected by the statute do not include the right for children to participate through chosen counsel. In no part of the audible portions of the hearings is the issue of independent representation of the child's desires discussed as a "right" of a child in a custody matter. Furthermore, the context of the additions demonstrates no intention to allow for additional legal representation of a child's wishes.

### B.

Eric next argues that section 14–10–124(1.5), 6B C.R.S. (1987), provides statutory authorization for the right of a child to choose counsel in a custody dispute. Section 14–10–124(1.5) states, in relevant part:

The court shall determine custody in accordance with the best interests of the child. The court, upon the motion of either party or upon its own motion, may order joint or sole custody after making a finding that joint or sole custody would be advantageous to the child and in his best interests. In determining the best interests of the child, the court shall consider all relevant factors, including:

> (a) The wishes of the child's parents as to his custody;
>
> (b) The wishes of the child as to his custodian; ...

§ 14–10–124(1.5), 6B C.R.S. (1987). Eric argues that "a prerequisite to the trial court considering the wishes of the child is for these wishes to be presented in a coherent and compelling manner." Eric also contends that neither a GAL nor a court can safeguard full representation of the child's wishes. Thus, he reasons that he must be afforded counsel of his choosing to effectuate the statutory purpose.

■ This argument is premised on a faulty assessment of the roles of the GAL and the court in determining and protecting the child's best interests. In considering the GAL's role, we recognize that the relationship between an attorney and a child client is not the same as that between an attorney and an adult client. *In re Marriage of Barnthouse*, 765 P.2d 610, 613 (Colo.App. 1988). As this case demonstrates, a child's attorney acts both as guardian and as advocate. *See, e.g., Leary v. Leary*, 97 Md.App. 26, 627 A.2d 30 (1993) (discussing the differing obligations of an attorney as a guardian and an advocate).

■ The Rules of Professional Conduct address these conflicting obligations. Specifically, an attorney must abide by Rule 1.14, which sets forth the guidelines for represen-

tation of a client under a disability.[8] The comment accompanying the rule states:

> The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a mental disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions. Nevertheless, a client lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well-being. Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. For example, children as young as five or six years of age, and certainly those of ten or twelve, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody.

*Colo.Rules of Prof. Conduct*, Rule 1.14 cmt. (1992). The rule and the comment establish that a minor child may have the ability to express an opinion concerning his or her best interests and that an attorney has the responsibility to consider the child's opinions in representing the child. However, the child is not competent "to make legally binding decisions." Those often difficult decisions must be made by the attorney representing the child, whether that attorney is the GAL or any other attorney. To the extent that Eric is claiming a right to require any attorney to represent his views without question, no attorney could provide such representation of a minor.

■ In addition to the ethical duties imposed by the Rules of Professional Conduct,

---

8. Rule 1.14 states:

> (a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client/lawyer relationship with the client.
>
> (b) Not only can the mental, physical, or other condition of the client impose additional

> responsibilities on the lawyer, the fact that a client is impaired does not relieve the lawyer of the obligation to obtain information from the client to the extent possible.
>
> (c) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot act in the client's own interest.

*Colo.Rules of Prof. Conduct*, Rule 1.14 (1992).

the GAL is also statutorily required to consider the child's desires when representing the child in a custody proceeding. Section 14–10–124; *Barnthouse*, 765 P.2d at 612. "The attorney should represent the children actively and present to the court all the evidence he can marshal concerning the best interests of the children." *Barnthouse*, 765 P.2d at 612. However, the attorney is not simply to parrot the child's expressed wishes. *Id.* Thus, the obligations of an appointed attorney in a custody proceeding require a higher degree of objectivity than must be exercised by an attorney representing an adult. *Id.* Nonetheless, the attorney represents the child, albeit in a manner different from the representation of an adult.[9] *See, e.g., State in Interest of D.M.*, 790 P.2d 562, 565–67 (Utah App.1990) (discussing situations meriting appointment of a Guardian ad Litem and effectiveness of GAL representation).

■ Further, the child's wishes are ascertained directly by the court without the filter of the GAL's representation. When the court evaluates the best interests of the child, it is required to consider the wishes of the child. § 14–10–124(1.5). To ascertain the best interests of the child, the court may interview the child concerning his wishes in addition to hearing the appointed attorney. § 14–10–126, 6B C.R.S. (1987).

Finally, this case demonstrates that Eric's wishes were in fact fully represented at the child custody hearing. The GAL repeatedly advised the court of Eric's position, including his displeasure with the GAL's recommendations. The court interviewed Eric on several occasions to ascertain Eric's desires. Any further representation of Eric's wishes would be unnecessary because, under existing statutory safeguards, Eric had a full and fair opportunity to be heard.

## C.

■ Eric also contends that the right to obtain his own counsel for the divorce proceeding is implied by the statute. We disagree.

First, Eric observes correctly that no provision in the UDMA precludes a child from obtaining his own counsel to directly advocate his position to the court. However, to have another attorney represent the wishes of the child in a dissolution proceeding would be duplicative and an unnecessary burden on the court. Numerous avenues exist for the child's wishes to be represented, including the Rules of Professional Conduct, the best interests determination, and interviews with the court. In fact, the UDMA mandates that the child's wishes be considered in any best interests determination. *See* § 14–10–124(1.5). Thus, the need for an additional attorney to represent Eric in these proceedings is unnecessary.

■ Second, Eric contends that in order for the UDMA to be harmonious with other statutes, this court should infer an independent right to counsel. *People v. Wiedemer*, 852 P.2d 424 (Colo.1993). For instance, Eric cites section 19–2–402(2)(a), 8B C.R.S. (1986 & 1994 Supp.) (appointment of a GAL under the temporary custody detention and shelter provisions of the Children's Code),[10] section 19–1–105, 8B C.R.S. (1986 & 1994 Supp.) (right to counsel in addition to a GAL under the general provisions of the Children's Code),[11] and section 19–1–111(2)(a), 8B

9. The representation is also different simply because of the status of a child. One other reason an attorney is appointed rather than selected by the child, for instance, is because a child does not have the capacity to contract or sign a retainer agreement. *See generally Doenges–Long Motors, Inc. v. Gillen*, 138 Colo. 31, 328 P.2d 1077 (1958).

10. Section 19–2–402(2)(a) states:
   If the juvenile or his parents, guardian, or other legal custodian requests counsel and the juvenile or his parents, guardian, or other legal custodian is found to be without sufficient financial means, or the juvenile's parents, guardian, or other legal custodian refuses to retain counsel for said juvenile, the court shall appoint counsel for the juvenile.

11. Section 19–1–105 states:
   (1) All hearings, including adjudicatory hearings, shall be heard by a judge or magistrate without a jury, except as otherwise provided by this title.
   (2) The right to counsel shall be as provided in this title; except that, in all proceedings under the "School Attendance Law of 1963", article 33 of title 22, C.R.S., the court shall appoint counsel or a guardian

C.R.S. (1986 & 1994 Supp.) (appointment of GAL under the general provisions of the Children's Code)[12] as support for legislative recognition of a child's right to counsel, including the right to choose counsel. We find this argument unpersuasive. We recognize that provisions of the children's code permit the court to appoint an attorney as guardian ad litem and another attorney to represent the child in a dependency and neglect action. However, we reject Eric's argument that statutory harmonization requires us to find implied authority for the same dual representation of a child in custody proceedings. Had the legislature intended to allow such representation in custody proceedings, it would have included a provision similar to that in the children's code. Instead, the legislature determined that a child's interests are sufficiently represented through a GAL.

In the present case, Eric's best interests, including his wishes, are all considered when the GAL makes representations to the court. The GAL's representation is sufficient to maintain consistency in the representation of children.

### D.

Eric argues that he is entitled to intervene to protect himself and his interests, pursuant to section 14–10–123(2), 6B C.R.S. (1987).[13]

Under the statute, when good cause is shown, a third party may intervene in the custody proceedings. § 14–10–123(2). Certainly, one of the persons most interested in a child custody dispute is the child. *See Veazey v. Veazey*, 560 P.2d 382, 390–1 (Alaska 1977) ("There is no person more interested in a child custody dispute than the child."); *Wendland v. Wendland*, 29 Wis.2d 145, 138 N.W.2d 185, 190–1 (1965) (holding that in a hotly contested custody dispute, a guardian ad litem may be necessary to ensure representation of a child's interests); *J.A.R. v. Superior Court*, 179 Ariz. 267, 877 P.2d 1323 (1994) (identifying need for independent counsel in a hotly contested custody dispute because of strong interest of child). However, the GAL's function is to represent the interest of the child in the custody, visitation, and parenting time proceedings. Under our interpretation, the child is not, then, an "other" interested party because the child is already fully represented in the proceeding. Since both the GAL and the court are required to consider the wishes and interests of the child, *no good cause exists for further intervention from the child in a determination of custody proceeding.*

Eric also argues that sections 15–14–203, 6B C.R.S. (1987) (protection of persons under disability section of the probate code)[14] and 19–5–202(2), 8B C.R.S. (1986)

---

ad litem for the child, unless the child is already represented by counsel. *If the court finds that it is in the best interest and welfare of the child, the court may appoint both counsel and a guardian ad litem. Nothing in this title shall prevent the court from appointing counsel if it deems representation by counsel necessary to protect the interests of the child or other parties.* (emphasis added).

12. Section 19–1–111(2)(a) states:
**Appointment of a guardian ad litem.** The court may appoint a guardian ad litem in the following cases:
(a) For a child in a delinquency proceeding where:
(I) No parent, guardian, legal custodian, custodian, relative, stepparent, or spousal equivalent appears at the first or any subsequent hearing in the case;
(II) The court finds that a conflict of interest exists between the child and parent, guardian, legal custodian, custodian, relative, stepparent, or spousal equivalent; or

(III) The court finds that the best interests of the child will be served by an appointment.

13. Section 14–10–123(2) states:

Notice of a child custody proceeding shall be given to the child's parent, guardian, and custodian, who may appear and be heard and may file a responsive pleading. The court may, upon a showing of good cause, permit the intervention of other interested parties.

14. Section 15–14–203 states:

**Objection by minor of fourteen years or older to appointment of guardian.** A minor of fourteen years of age or older may prevent appointment of his guardian from becoming effective or may cause a previously accepted appointment to terminate by filing with the court in which the will is probated or the written instrument is filed with a written objection to the appointment before it is accepted or within thirty days after notice of its acceptance. An objection may be withdrawn. An objection

(allowing a minor to petition the court in an adoption proceeding) [15] are evidence of an implied right to petition the court in custody matters. He draws additional authority for this position from *In re Marriage of Conradson,* 43 Colo.App. 432, 604 P.2d 701 (1979) (holding that a child has standing to seek support from parents). Indeed, a child has the right to petition the court through counsel. However, the proper means for petitioning the court is through the appointed attorney. The GAL can enforce any support, visitation or parenting time obligations through the proceeding. Because the GAL can petition the court for the minor, the child's rights are adequately served.

## IV.

■ Finally, Eric argues that, if he has no statutory right to counsel of choice, his constitutional rights are violated. Specifically, he contends that his constitutional due process interest in family relationships and right to court access are violated when he is denied counsel of choice.[16] We reject his constitutionally-based argument as well.

## A.

Eric asserts that his due process liberty interest in family relationships is unprotected by the GAL. He argues that the system developed under the UDMA does not provide adequate procedures to safeguard his due process interest.

■ Our state and federal constitutions protect both minors and adults. *In re Gault,* 387 U.S. at 13, 87 S.Ct. at 1436 ("Neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."); *Tinker v. Des Moines Community Sch. Dist.,* 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969) ("Minors, as well as adults, are protected by the Constitution and possess constitutional rights.").

■ The Fourteenth Amendment to the constitution guarantees that no state shall "deprive any person of life, liberty, or property without due process of law. . . ." U.S. Const.Amend. XIV. One of the liberty interests protected by this amendment is the right to choose family relationships. *See Santosky v. Kramer,* 455 U.S. 745, 758 n. 9, 102 S.Ct. 1388, 1397 n. 9, 71 L.Ed.2d 599 (1982) (the interest in family relationships is a fundamental liberty interest); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972) ("integrity of the family unit has found protection in the Fourteenth Amendment," citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). The right to family relationships applies reciprocally between parent and child. *Smith v. Fontana,* 818 F.2d 1411, 1414, 1418 (9th Cir.1987); *Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977). Because a custody determination greatly affects family relationships, Eric has an affected liberty interest.

does not preclude appointment by the court in a proper proceeding of the person appointed by will or written instrument or any other suitable person.

15. Section 19–5–202(2) states that "A minor, upon approval of the court, may petition the court to decree an adoption."

16. Eric points to *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), *People v. Spencer,* 185 Colo. 377, 524 P.2d 1084 (1974), and *Selby v. Jacobucci,* 142 Colo. 52, 349 P.2d 567 (1960) as support for the proposition that he has a constitutional right to counsel. Reliance on these cases is misplaced. *Gault, Spencer,* and *Selby* addressed the Sixth Amendment right to assistance of counsel in delinquency cases. The Sixth Amendment to the United States Constitution states,

In all *criminal prosecutions* the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and *to have the assistance of counsel for his defense.*

U.S. Const.Amend. VI (emphasis added). It is important to note that the constitutional right to assistance of counsel is limited to adult proceedings which are criminal in nature and equivalent juvenile cases. Because dissolution of marriage cases cannot be equated to criminal proceedings, the Sixth Amendment right to assistance of counsel does not extend to proceedings under the UDMA.

To determine the amount of process due when a liberty interest is affected, the United States Supreme Court has adopted a three part test:

(1) the private interest affected by the official action;

(2) the risk of error through the procedures used and the probable value of additional or substitute procedural safeguards;

(3) the government's interest, including the fiscal and administrative burdens that additional requirements entail.

*Matthews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975); *see also Van Sickle v. Boyes,* 797 P.2d 1267 (Colo. 1990).

■■■ Eric argues that his private interest may be affected dramatically by this official action because he may be deprived of any interaction with one of his parents through the custody proceeding. However, the effect will not be as dramatic as asserted. As continually recognized in this opinion, the official action requires a consideration and evaluation of Eric's wishes, and the court retains jurisdiction to adjust the custody determination as changing circumstances may require. Thus, because a child is given the opportunity to express his wishes and the court is required to factor in those preferences in determining custody rights, the effect is not substantial.

The risk of error through existing procedures under the UDMA is low. The GAL's sole duty is to protect all of the interests of the child with respect to custody, support and parenting time, including the child's liberty interests. As such, Eric's interests are fully protected by the GAL through the UDMA procedures and Rules of Professional Conduct. *See* discussion, *supra,* at III(B). The court must then evaluate the determination of the GAL. When making such evaluations, the court must consider the integrity of the family and the quality of life that would be best for the child, taking into account the child's own wishes. *See* § 14–10–124. The child's wishes are an important factor in both the appointed attorney's and the court's determinations. Thus, the risk of a wrongful deprivation of this interest is very low.

The interests of the government in maintaining the current procedure are great. Adding another attorney to the case would overburden the courts and the parties by increasing costs and causing delays without significantly increasing the fairness of the proceeding. The trial court recognized the difficulty of protracted litigation with numerous attorneys and determined that it could evaluate the best interests of the child without adding another attorney.

### B.

Eric also asserts that he has a right of access to the courts which is unprotected when proceeding through a GAL. He asserts that when a GAL disagrees with his views, he does not have effective access to the court through a legal representative because no one will file a claim on his behalf. As such, Eric contends that he is entitled to counsel of his own choosing to ensure effective access to the courts.

■■■ The United States and Colorado constitutions guarantee a right of access to the courts. Colo. Const. art. 2, section 6; U.S. Const.Amend. XIV; *see also Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970) (recognizing a constitutional right of access to courts); *State Farm v. Broadnax,* 827 P.2d 531, 534 (Colo.1992) (holding that the right of access to courts is located in the Due Process Clause of the Fourteenth Amendment and the First Amendment's provision securing the right to petition the government for redress of grievances and holding that the Colorado Constitution has an express right of access to courts).

■■■ However, as we recently held in *Allison v. Industrial Claim Appeals Office,* 884 P.2d 1113 (Colo.1994), the constitutional right to access does not create a substantive right; it provides a procedural right to a judicial remedy whenever the General Assembly creates a substantive right under Colorado law. Thus, the "access" right guarantees access to the courts when an individual has a viable claim for relief. We hold that Eric has no substantive right to choose his own counsel.

As such, Eric's right of access is not violated because he has no unrepresented substantive rights.

## V.

In conclusion, we hold that the issue of additional representation for Eric is not moot. However, representation of the child's interests under the UDMA is adequate to satisfy all constitutional and statutory requirements. Since the child's interests are fully represented in the dissolution proceeding through the GAL, no right to intervene exists with regard to custody disputes. Eric's interests will be represented by the GAL until he reaches the age of emancipation.

For these reasons, we reverse the judgment of the court of appeals with instructions to affirm the trial court's denial of entry of appearance.

LOHR, J., concurs in part and dissents in part.

ERICKSON and KIRSHBAUM, JJ., join in the concurrence and dissent.

Justice LOHR concurring in part and dissenting in part:

The majority holds that the interests of a minor child who is the subject of a custody dispute incident to a dissolution of marriage proceeding are adequately protected by an attorney appointed by the court under section 14–10–116, 6B C.R.S. (1987). Accordingly, as I understand the majority opinion, a minor has no right to be represented by his or her own counsel, and a trial court has no discretion to permit such representation. I agree that the issue is not moot, see maj. op. part II, and that a minor child does not have the right to participate through the child's own counsel in every case. I would hold, however, that a trial court has the discretion to permit a child to be separately represented by counsel where such representation appears to the court to be necessary to a fully informed custody determination based upon the child's best interests. Because the trial court did not apply this standard, I would reverse and remand for reconsideration of the motion of the Children's Legal Clinic to enter its appearance as counsel for the minor child Eric Hartley.

## I.

This case presents the issue of the ability of a minor child to be represented by counsel in a custody dispute arising out of a dissolution of marriage proceeding. The basic facts and procedural history are set forth in the majority opinion. They reflect ongoing disputes concerning the proper custody and visitation rights as to Eric Hartley.

Eric was born on September 15, 1977, and was twelve years of age when his father filed a petition for dissolution of marriage on November 1, 1989.[17] Shortly thereafter, based on a stipulation by the parties, the court appointed an attorney to represent Eric's interests with respect to his custody, support, and visitation, pursuant to section 14–10–116, 6B C.R.S. (1987). (I refer to this attorney as the "GAL," an abbreviation for guardian ad litem, to correspond to the term used in the majority opinion). After a hearing on February 15, 1990, the father and mother were awarded temporary joint custody. Then, at a hearing on June 25, 1991, the parties stipulated to sole custody in the mother with visitation rights for the father. The hearing was continued, however, and was not completed until December. In the meantime, Eric sent a letter to the GAL expressing great dissatisfaction with his services. Eric detailed incidents of alleged physical and psychological abuse by his mother, expressed the strong desire to live with his father, complained that the GAL was not helping him and was saying that Eric did not understand and that he had no choice but to live with his mother, and purported to "fire" the GAL. Eric sent a copy of the letter to the judge and asked to talk with him.

On October 3, 1991, the trial court "sua sponte," based "upon a telephone conversation with the [GAL]" found that "the immedi-

17. Eric's brother, Chad, then aged fourteen, was also involved in the custody proceeding. However, Chad's custody was not at issue in this case.

ate physical safety and emotional well being dictate that the minor child Eric Lee Hartley be allowed to reside full time on an interim emergency basis with his father" pending review at a hearing scheduled for October 29, 1991. After that latter hearing, however, the court established an interim divided custody schedule placing custody with the mother during the week and with the father on weekends. On December 4, 1991, the court completed the hearing begun in June and entered a decree of dissolution of marriage granting sole custody of Eric to the mother.

The dissolution decree did not resolve the underlying problems, and Eric continued to have altercations with his mother, some of which resulted in police intervention. Eric also experienced difficulties with his mother's live-in boyfriend, against whom criminal assault charges were filed but later dismissed based on an incident of alleged verbal and physical abuse of Eric. In addition, the father and mother each sought and received temporary restraining orders in other courts restraining the other from specified actions with respect to Eric, and the mother initiated contempt of court proceedings against the father for alleged violations of visitation orders relating to Eric. As a result of the post-decree turmoil, the court ordered a custody evaluation of Eric.

It was against this background of continuing conflict that the Children's Legal Clinic, at Eric's request, moved to enter its appearance as counsel for Eric and to modify custody to grant sole custody of Eric to the father. After an April 10, 1992, hearing on the motion for entry of appearance, the trial court found that it had appointed the GAL pursuant to section 14–10–116 to represent Eric's interests, that each parent had been "vigorously represented" by counsel, that the GAL had attended and made recommendations at each hearing, that the GAL "clearly repeatedly acknowledged to the court that Eric has disagreed with his recommendation" that custody be granted to the mother, that the court had interviewed Eric and ordered a custody evaluation, and that the court previously had determined that Eric's best interests mandated that sole custody be placed with the mother.

The court then observed that it had been referred to "no authority by which an allegedly independent advocate for the child may seek to enter an appearance for the child in these proceedings." It construed the statutory framework as providing for attorneys for the father and mother, who represent their clients' wishes with respect to custody and visitation, and an attorney appointed for the child under section 14–10–116, who is bound to formulate custody recommendations by application of the criteria to determine the "best interests of the child" as set forth in section 14–10–124, 6B C.R.S. (1987). The court concluded that although the wishes of the child are one element to be considered in applying those criteria, the child's wishes are not dispositive.

The court found that the GAL had adhered to the role prescribed by statute and determined that simply because Eric disagreed with and purportedly fired the GAL "the court is not compelled to permit entry of yet another attorney in these proceedings." The court therefore denied the motion of the Children's Legal Clinic for entry of appearance.

II.

The Uniform Dissolution of Marriage Act, §§ 14–10–101 to –133, 6B C.R.S. (1987 and 1994 Supp.) (cited herein as UDMA), specifically requires a trial court to make a custody determination based on a child's best interests. When read as a comprehensive whole, I would interpret the various provisions of the UDMA as providing implied authority for a trial court to allow a child to be represented by independent legal counsel when necessary to evaluate what constitutes a particular child's best interests.

For example, both sections 14–10–123.4 and 14–10–124(1.5), 6B C.R.S. (1987), require trial courts to determine custody in accordance with the best interests of the child. Additionally, section 14–10–123(2), 6B C.R.S. (1987), allows trial courts, in their discretion and on a showing of good cause, to "permit the intervention of other interested parties." If a child's basic right under the UDMA to be "safe from physical, psychological, and

emotional harm", maj. op. at 670, would be enhanced or better protected by allowing a child to be represented by independent counsel, the trial court should have the discretion to allow such representation. *See generally* Carl E.K. Johnson, *The Role of Children's Counsel in Contested Child Custody, Visitation and Support Cases,* 15 Colo.Law. 224 (1986) ("In recent years, the proposition that children involved in contested child custody, visitation and support cases should be afforded independent legal representation has gained increasing favor.").

To determine what constitutes the best interests of the child, a court must consider all relevant factors, including thirteen statutorily specified factors. § 14–10–124(1.5), 6B C.R.S. (1987); *In re Marriage of Lester,* 791 P.2d 1244, 1246 (Colo.App.1990). One such factor is "[t]he wishes of the child as to his custodian." § 14–10–124(1.5)(b). Other factors relate to intra family history and relationships of which a child may have particularly helpful knowledge. *See* § 14–10–124(1.5)(c) (interaction and interrelationship of child with parents, siblings and others), (f) and (h) (ability of custodian to encourage sharing of love, affection and contact with noncustodial parent), (g) (ability of parties to cooperate and make decisions jointly), (*l*) (history of child abuse), (m) (history of spouse abuse).

Certainly, this information may be available to the court from the GAL or other sources indirectly. The court may also obtain information directly from the child by court interviews with the child under section 14–10–126, 6B C.R.S. (1987). Such information, however, may be more persuasive when developed and presented by competent counsel committed to representing a child's expressed interest in the custody determination. Moreover, what is involved is not simply the presentation of the child's wishes or desires, as the majority suggests. See maj. op. at 671–672. Instead, there may well be serious issues as to the relevant facts concerning intra family relationships and the conduct of parents toward their children.

The GAL necessarily is in an evaluative role and may disbelieve factual representations made by a child. In case of such a conflict, a court might benefit from the efforts of counsel committed to representing the position of the child.

There are several factors that bear on the appropriateness of such representation. The trial court should consider the age, maturity, judgment and motivations of the subject child, the amount of time that the GAL has been able to devote to investigating the case, and whether significant facts pertaining to the child's well-being are in dispute.[18] Additionally, the trial court should have the authority to enter an order for the costs and fees incurred by the child's attorney against any or all of the parties to the proceeding or, in the event that a party against whom such an assessment is made is indigent, to have the fees and costs borne by the state. *See* § 14–10–116, 6B C.R.S. (1987).

Further support for discretionary recognition of counsel for the child is contained in the Final Draft of Proposed GAL Standards of Practice approved by the Colorado Bar Association Board of Governors. *Final Draft of Proposed GAL Standards of Practice,* 22 Colo.Law. 1907, 1909 (1993). Section 4.1 of those standards provides in relevant part:

> The GAL should formulate an independent position after considering all relevant information, including, but not limited to, the desires of the child or ... parents and relatives.
>
> The GAL's recommendations should result from independent investigation. ... The GAL does not necessarily adopt or advocate for the child's ... desires, unless it would serve his or her best interests. Unless there are compelling reasons concerning the child's ... welfare, the GAL shall communicate the child's ... desires to the court or arrange for him or her to do so directly. *When appropriate, the GAL should recommend that the court*

---

**18.** This list is not meant to be exhaustive, but rather should serve as a starting point in the trial court's analysis of whether independent legal counsel for a child should be allowed in a particular case.

*appoint counsel to advocate the child's ... point of view.*

(Emphasis added).[19]

The majority holds that the UDMA gives a trial court no discretion to permit a minor child to be represented by an attorney representing the child's expressed interest in a custody dispute, even though acknowledging that there is no person more interested in such a dispute than the child. *See* maj. op. at 673. This, in my opinion, represents too rigid a construction of the statutory scheme and deprives the trial court of a resource that—while perhaps rarely necessary or appropriate—can provide critically important assistance to a court in a particular case in assuring that a custody determination truly serves the best interests of the child.

### III.

The majority contends that "under existing statutory safeguards, Eric had a full and fair opportunity to be heard." Maj. op. at 672. However, the majority also acknowledges problems inherent in the GAL-child legal relationship, problems that may, in fact, inhibit the opportunity for the child's opinion and the factual basis for that opinion to be adequately and convincingly presented to the trial court.

The GAL in the present case was appointed by the court pursuant to section 14–10–116, 6B C.R.S. (1987), of the UDMA. Section 14–10–116 provides:

> The court may, upon the motion of either party or upon its own motion, appoint an attorney to represent the interests of a minor or dependent child with respect to his custody, support, and visitation. The court shall enter an order for costs, fees, and disbursements in favor of the child's

attorney. The order shall be made against any or all of the parties; except that, if the responsible party is indigent, the costs, fees, and disbursements shall be borne by the state.[20]

As the majority correctly notes, the relationship between a GAL appointed by the trial court pursuant to section 14–10–116 and a child whose interests the attorney represents is not the same as between an attorney and an adult client. *See* maj. op. at 671–672. In certain circumstances, this "difference" may militate in favor of having independent legal representation for a child. For example, an attorney appointed under section 14–10–116 must represent the child's interests alone, but in doing so "is not simply to parrot the child's expressed wishes." *In re Marriage of Barnthouse,* 765 P.2d 610, 612 (Colo. App.1988). Rather, the attorney is charged with determining and recommending "those available alternatives which are in the best interests of the child," and to do so requires "a higher degree of objectivity [by] a child's attorney than that for an attorney representing an adult." *Id.* The role may require investigation; interviews with the child, foster parents and other witnesses; participation in hearings; and recommendations to the court. *Id.* (characterizing the attorney's functions as substantially similar to those imposed on guardians ad litem appointed under section 19–10–113(3), 8B C.R.S. (1986)).

It is apparent, therefore, that an attorney conscientiously performing responsibilities created by an appointment under section 14–10–116 may properly conclude that a custody award in accordance with a minor child's expressed wishes would not be in the child's best interests and may recommend a different custody arrangement to the court. The result, however, may be that the minor child

---

19. The standards were submitted to the Colorado Supreme Court for consideration but the Court elected not to give them the status of rules by official adoption.

20. The statute makes no reference to the term guardian ad litem but rather describes the appointee as an attorney. Notwithstanding the absence of such a reference, one practicing attorney has noted: "In practice, however, Colorado district courts frequently refer to the children's

legal representative in their orders of appointment as a guardian *ad litem,* rather than as an attorney for the child." Carl E.K. Johnson, *The Role of Children's Counsel in Contested Child Custody, Visitation and Support Cases,* 15 Colo. Law. 224 (1986).

In 1993, the statute was amended to strike the word "his" and to substitute "parenting time" for "visitation." Ch. 165, Sec. 8, § 14–10–116, 1993 Colo.Sess.Laws 575, 577.

feels unrepresented and perhaps even betrayed. Even though the GAL may be careful to advise the court of the child's contrary opinion, the risk is high that the strength and earnestness of that opinion, and the factual basis for it, will be diluted or obscured by the GAL's own opinion and recommendation. To ensure that the child's own independent perspective, untainted by the opinions of others, is presented to the court, the retention of independent legal counsel in a particular case may assist the trial court to determine what that child's best interests truly are with respect to custody, visitation, and support.

## IV.

The facts of the present case provide a good example of how independent legal counsel may have prevented the events that culminated in the trial court's ultimate custody award of Eric to his father.[21] Eric's letter to the GAL detailing incidents of physical and psychological abuse by his mother and the trial court's emergency order awarding temporary interim custody of Eric to the father present compelling evidence of a deteriorating mother-son relationship. Perhaps if Eric had retained independent legal counsel to help him document these alleged incidents of abuse or to present other evidence as to why he should be allowed to reside with his father, the trial court would not have awarded Eric's custody to the mother in its December 4, 1991 order. Moreover, the record reveals that both the mother and father were involved in numerous court proceedings to restrain the other from specified actions with respect to Eric, to the extent that issues regarding Eric's well-being may not have been adequately presented to the trial court. Additionally, the relationship between Eric and his mother following entry of the December 4, 1991, order deteriorated to such an extent that the court felt compelled to order a custody evaluation of Eric. Again, if Eric had been allowed to retain legal counsel to help his voice be heard over the din of acrimony and recrimination and to help him present evidence as to why he should be allowed to reside with his father on a permanent basis, the court may have given more weight to Eric's wishes at an earlier time. Finally, it should be emphasized that the GAL in this case did not oppose the appointment of independent legal counsel for Eric and specifically stated, at one of the hearings, that such an appointment might be advisable.

In the present case, the trial court's order indicated that the court did not believe it had discretion to appoint counsel for Eric and expressed some concern about the introduction of an additional attorney to the cast of litigators. The trial court is in the best position to evaluate the matters referred to in the immediately preceding paragraph and to determine the appropriateness of an appointment of counsel to represent Eric under the standards discussed in this dissenting opinion. I would reverse the judgment of the Colorado Court of Appeals and remand the case to that court with directions to reverse the order of the trial court denying the motion of the Children's Legal Clinic to appear on behalf of Eric. I would further require that the trial court reconsider the motion under the standards set forth in this dissenting opinion.

I agree that this case is not moot, but, for the reasons stated, I respectfully dissent on the merits.

ERICKSON and KIRSHBAUM, JJ., join in this concurrence and dissent.

---

21. *See* maj. op. at 668, noting that on November 5, 1992, the court awarded sole custody of Eric to the father.